UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

CASE NO.

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| BURTON DOUGLAS MORRISS, | ) |
| ACARTHA GROUP, LLC, | ) |
| MIC VII, LLC, | ) |
| ACARTHA TECHNOLOGY PARTNERS, LP, and | ) |
| GRYPHON INVESTMENTS III, LLC | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| MORRISS HOLDINGS, LLC, | ) |
| | ) |
| Relief Defendant. | ) |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

## I.   INTRODUCTION

1.    From approximately 2005 through 2011, Defendant Burton Douglas Morriss, through several private equity funds and fund management companies he controlled, fraudulently transferred approximately $9.1 million of investor funds to himself and his family's holding company for personal use. Among other things, Morriss satisfied loans, paid alimony, and took expensive vacations. The companies disguised the transfers as loans and/or receivables without the knowledge or consent of investors. The offering documents and subscription agreements of the entities through which Morriss solicited investments failed to advise investors that Morriss could or would transfer their money for his personal use.

2. In addition, Morriss and the management company he controlled concocted a scheme to recruit new investors to purchase membership interests in one of the private equity funds, MIC VII, LLC, without the unanimous consent of the existing investors as required by MIC VII's Limited Liability Company Agreement. This diluted the investments of existing MIC VII investors. Effectively, Morriss used the $2.5 million in investor funds to satisfy a portion of a personal loan.

3. Through their conduct, Morriss and Defendants Acartha Group, LLC; MIC VII, Acartha Technology Partners, LP ("ATP"); and Gryphon Investments III, LLC (collectively, the "Investment Entities") have violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Morriss also aided and abetted the Investment Entities violations' of Section 10(b) and Rule 10b-5(b) of the Exchange Act. Morriss, Acartha Group and Gryphon Investments additionally violated Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. § 80b-6(1), 80b-6(2), and 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2). Morriss also aided and abetted Acartha Group's and Gryphon Investments' violations of Sections 206(1), 206(2), 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 17 C.F.R. § 275.206(4)-8(a)(2). Unless the Court enjoins them, they are reasonably likely to continue to violate these provisions.

2

## II.   DEFENDANTS AND RELIEF DEFENDANT

### A.   Defendants

4.   **Morriss**, age 49, resides in St. Louis, Missouri.  Morriss is CEO and the chairman of Acartha Group's board of directors, the managing member of MIC VII.  Morriss is also a manager of Gryphon Investments, the general partner of ATP.  Morriss is also the chairman and controlling member of Relief Defendant Morriss Holdings, LLC, and a member of its board of directors.

5.   **Acartha Group** is a Delaware limited liability company incorporated in February 2003, with its principal place of business in Clayton, Missouri.  It also maintains an office in East Brunswick, New Jersey.  Acartha Group was established as a private equity fund management company.  Acartha Group is the managing member of MIC VII and also manages Gryphon Investments.

6.   **MIC VII** is a Delaware limited liability company incorporated in March 2005, with its principal place of business in Clayton, Missouri.  MIC VII is a private equity fund formed to invest in early to mid-stage companies primarily in the financial services and technology sectors.

7.   **ATP** is a Delaware limited partnership organized in April 2008, with its principal place of business in Clayton, Missouri.  ATP is a private equity fund formed for the same purpose as MIC VII.

8.   **Gryphon Investments** is a Delaware limited liability company incorporated in February 2003, with its principal place of business in Clayton, Missouri.  Gryphon Investments is the general partner of ATP.

3

**B.  Relief Defendant**

9.  **Morriss Holdings, LLC** is a Missouri limited liability company incorporated in March 1998, with its principal place of business in Clayton, Missouri. Morriss Holdings is a family business Morriss controls.

## III.  JURISDICTION AND VENUE

10.  The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); Sections 21(d), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

11.  This Court has personal jurisdiction over the Defendants and the Relief Defendant, and venue is proper in the Eastern District of Missouri because many of the Defendants' acts and transactions constituting violations of the Securities Act, Exchange Act, and Advisers Act occurred in the Eastern District of Missouri. Also, the Investment Entities and Morriss Holdings maintain offices in the Eastern District of Missouri, and Morriss resides in the Eastern District of Missouri. Moreover, Morriss and the Investment Entities offered and sold securities and solicited and received funds in this district.

12.  In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV. THE DEFENDANTS' FRAUDULENT CONDUCT

### A. Background

13.     Incorporated in 2003, Acartha Group managed MIC VII and ATP – private equity funds that invested in early to mid-stage companies in the financial services and technology sectors. Morriss operated as Acartha Group's CEO and served as the chairman of Acartha Group's board of directors. Acartha Group also controlled several special purpose vehicles that invested in the same private companies in which MIC VII and ATP invested. Morriss and Gryphon Investments represented to investors that it was the fund manager for ATP, however, it outsourced ATP's management operations to Acartha Group. Morriss solicited investments through emails, telephone calls, and meetings with potential investors.

14.     As private equity fund manager, Acartha Group's business included, among other things, selecting the private companies in which to invest and managing the day-to-day operations of the funds. Acartha Group had two sources of revenue: (1) it collected a 2% management fee from investors' committed capital; and (2) a percentage of carried interest. Morriss and the Investment Entities defined carried interest as the net profit from the sale of a private equity fund's portfolio company after investors received distributions equal to their invested capital in that portfolio company. For example, after the sale of an ATP portfolio company, ATP first used the proceeds to reimburse investors for their pro-rata share of the principal invested by ATP in the portfolio company. ATP characterized any remaining profit after that distribution as carried interest, a percentage of which ATP would distribute to Acartha Group and its investors.

15.     From 2003 until 2011, Morriss and the Investment Entities raised at least $88 million from approximately 97 investors to invest in preferred shares or membership interests of

5

the equity funds MIC VII and ATP, the related special purpose vehicles, and the management companies – Acartha Group and Gryphon Investments.

16.     Investors who invested in the management companies did so to receive a percentage of the carried interested owed to those companies. In addition, Gryphon Investments investors had the option to convert their Gryphon Investments shares into common partnership shares and/or invest in ATP.

17.     Morriss and Acartha Group established MIC VII in 2005. Acartha Group served as its managing member. The original purpose of MIC VII was to invest in several portfolio companies while Morriss and Acartha Group were in the process of creating a larger fund – ATP. Formed in 2008, ATP invested in many of the same portfolio companies.

18.     As of 2011, investors of ATP, MIC VII, and the related special purpose vehicles had invested approximately $53 million in portfolio companies.

**B.     Morriss' Misappropriation of Funds from the Investment Entities**

19.     Unbeknownst to investors, Morriss misappropriated more than $9 million from the Investment Entities for his personal use. Morriss directed the Investment Entities to transfer funds to himself and to Morriss Holdings.

20.     Morriss lived a lavish lifestyle, living in a multi-million dollar home, driving luxury automobiles, leasing a private airplane and helicopter, and taking expensive vacations.

21.     As early as 2005, Morriss was taking funds from Acartha Group, while at the same time lending money to it. In early 2006, Acartha Group's new CFO – concerned about the transfers – implemented a "netting agreement," which tracked the difference between the amounts Morriss and Morriss Holdings advanced to and took from Acartha Group. The netting agreement did not provide for the accrual of interest. By December 2006, Morriss and Morriss

6

Holdings owed Acartha Group approximately $2.2 million. In that same month, another entity Morriss controlled satisfied that debt. Subsequently, Morriss was, at times, both a borrower from and a lender to Acartha Group, MIC VII, ATP, and Gryphon Investments.

22.     In 2008, Acartha Group's CFO changed the manner in which the Investment Entities recorded transfers to Morriss and Morriss Holdings from non-interest-bearing transfers to individual promissory notes. The notes provided for the payment of interest for the transfers from the Investment Entities to Morriss and Morriss Holdings. The notes, however, were not collateralized and had no due date.

23.     Around this time, Morriss began experiencing increasingly severe financial difficulties. As a result, he began selling personal assets, including a lodge and hunting property in Canada, and he relinquished his leasing interests in the use of his personal aircraft. He also became delinquent on several million dollars in personal loans. Due to his deteriorating financial condition, Morriss continued to move money from the Investment Entities to himself and Morriss Holdings.

24.     By the summer of 2009, Morriss had borrowed more money than he had advanced to Acartha Group and the other Investment Entities. At that time, Acartha Group's Chief Administrative Officer and its outside accountant alerted Morriss to the situation. Morriss, however, continued to transfer money to himself and Morriss Holdings. By the end of 2009, Morriss and Morriss Holdings owed Acartha Group, MIC VII, ATP, and Gryphon Investments approximately $2 million.

25.     At the same time, Acartha Group's financial condition was deteriorating. As a result, officers of Acartha Group and ATP expressed concern to Morriss about the extent of the transfers from the Investment Entities to Morriss and Morriss Holdings. For example, on

7

December 29, 2008, Acartha Group's Chief Financial Officer sent an email to Morriss concerned that Morriss had transferred $50,000 from ATP to himself, without advising the CFO of the transaction. Acartha Group's CFO left the company soon after, in part due to Morriss' transfers. Moreover, a March 14, 2009, email from Acartha Group's Chief Administrative Officer to Morriss and another officer advised that Acartha Group's Chief Technology Officer was upset and shocked by the amount of fund proceeds Morriss transferred to himself.

26.     Morriss also transferred new investor money from Gryphon Investments and ATP to himself and Morriss Holdings. For example, between March 2008 and June 2009, Morriss transferred approximately $1.7 million out of a total of $3.75 million in new Gryphon Investments investor funds to himself and Morriss Holdings. In addition, Morriss used $305,000 of Gryphon Investments investor funds to pay interest due on his personal line of credit. Similarly, from September 2009 through August 2010, Morriss took at least $1.4 million out of approximately $6 million in new ATP investor funds.

27.     In anticipation of an external audit of Acartha Group, in 2010 its management decided to consolidate Morriss' and Morriss Holdings' promissory notes with the Investment Entities. Acartha Group reclassified all of the transfers from the Investment Entities to Morriss and Morriss Holdings into a consolidated note receivable due from Morriss Holdings to Acartha Group.

28.     Even after the consolidation, Morriss continued to transfer money to himself and Morriss Holdings through at least August 2011. From December 31, 2009 through at least September 30, 2011, net transfers of funds from Acartha Group to Morriss and/or Morriss Holdings more than tripled, ballooning to at least $6.6 million plus interest.

8

29.     Morriss used the funds he transferred from the Investment Entities to himself and Morriss Holdings for personal expenditures, including alimony payments, interest payments for personal loans, and expensive vacations, including a hunting trip to Africa.

### C.     The Defendants' Misrepresentations and Omissions to Investors

30.     Morriss, Acartha Group, MIC VII, ATP, and Gryphon Investments defrauded investors by failing to disclose that Morriss would or could use investor proceeds for personal use. The offering and operating agreements varied among the Investment Entities, yet none advised investors Morriss would use their funds personally, let alone have the Investment Entities make personal, unsecured loans to Morriss and Morriss Holdings.

31.     To the contrary, the offering and operating documents of ATP specifically prohibited Morriss from taking loans, while the documents of the other Investment Entities describe the permissible uses of fund money in vague, broad, or inconsistent terms. Morriss deliberately requested that the Investment Entities utilize vague and broad language in these documents. As a result, he and the Investment Entities misled investors as to how the Defendants would use their funds.

32.     For example, Section 7.7 of ATP's 2008 Agreement of Limited Partnership, entitled "No Transfer, Withdrawal or Loans" advised investors the fund could not make loans. Specifically, the agreement stated "the General Partner may not, voluntarily or involuntarily . . . sell assign, transfer, pledge, mortgage, hypothecate, encumber or therein dispose of or grant a security interest in, all or any of its interest except as otherwise specifically set forth herein. The General Partner *may not borrow or withdraw any funds or securities from the Partnership* except as expressly permitted by this Agreement" (emphasis added). The agreement contains no

9

provision advising investors that ATP could use investor funds to make personal transfers or loans to Morriss and Morriss Holdings.

33. Similarly, Gryphon Investments' 2008 Limited Liability Company Operating Agreement includes language indicating the company would not use investor funds for personal transfers or loans to Morriss. Section 4.1.1.9 of the Agreement advised investors that Gryphon Investments' management could "make loans or advances to other Persons," but specifically excluded "members, Managers and Affiliates of Members and of Managers."

34. In contrast, the 2005 MIC VII Amended and Restated Limited Liability Company Operating Agreement stated in vague terms that the "Managing Member is authorized and empowered on behalf of and in the name of the Company to carry out any and all of the purposes of the Company and to perform all acts and enter into and perform all contracts and undertakings that it may, in its sole discretion, deem necessary, advisable or incidental thereto." It did not advise investors MIC VII would transfer investor money to Morriss and Morriss Holdings.

35. Acartha Group's 2007 Private Placement Memorandum ("PPM") similarly failed to alert investors the company would transfer their funds to Morriss and Morriss Holdings for Morriss' personal use. Like the MIC VII Operating Agreement, Acartha Group's PPM utilized vague terms. It provided that "net proceeds of this offering after payment of expenses are anticipated to be used to repay existing obligations of the Company and for working capital purposes. Management will have broad discretion with respect to the application of these funds." Nowhere did the PPM advise investors that Acartha Group would be using their funds as a routine source for personal transfers to Morriss and Morriss Holdings.

36. Due to its deteriorating financial position, in December 2011 Acartha Group issued a letter to investors disclosing for the first time, the transactions with Morriss and Morriss

10

Holdings and requesting additional funds so Acartha Group and the funds it managed could continue operations. Acartha Group also advised investors that Morriss had taken a leave of absence from Acartha Group.

### D. Defrauding MIC VII Investors

37.     In addition to the more than $6 million in fraudulent transfers Morriss and Morriss Holdings received from Acartha Group, ATP, MIC VII, and Gryphon Investments, in 2008, Morriss received an additional $2.5 million from MIC VII.  In July 2008, MIC VII obtained a $2.5 million loan from Wachovia Bank, which Morriss personally guaranteed.  MIC VII used the proceeds of the Wachovia loan to acquire stock in one of its portfolio companies on behalf of investors.  Unable to repay the loan, MIC VII later sold the stock it acquired in the portfolio company to ATP for $2.5 million.

38.     Rather than pay back the loan and extinguish the debt MIC VII and its investors owed, Morriss misappropriated the money for his personal use.  Morriss used the $2.5 million to pay down a portion of a personal, family loan unrelated to the operations of MIC VII.  The debt MIC VII owed to Wachovia remained outstanding.  Neither Morriss, MIC VII, nor Acartha Group disclosed to investors Morriss' receipt of the $2.5 million at the time of the transfer.

39.     In 2010, in order to satisfy the outstanding Wachovia loan, Morriss recruited additional investors to join MIC VII.  The MIC VII Operating Agreement, however, required the managing member of MIC VII (Acartha Group) to obtain unanimous consent of existing investors to admit new investors into MIC VII.  Morriss deliberately circumvented this Operating Agreement by concocting a fraudulent scheme to admit additional investors into MIC VII without the unanimous consent of existing investors.

11

40.    The scheme, on paper, worked like this: the new investors were to invest in MIC VII indirectly by investing their money into a new company – Acartha Group Funding, LLC, which Acartha Group and Morriss managed. In turn, Acartha Group Funding was to invest in Acartha Group, which would then invest these funds into MIC VII on the new investors' behalf. In return for the additional funds, Acartha Group agreed to distribute more than 10% of any future MIC VII distributions to the new investors. In reality, however, the new investors simply wired their funds directly to Wachovia bank to satisfy MIC VII's loan.

41.    The transaction resulted in the dilution of earlier MIC VII investors' interests, unbeknownst to them.

### E.    Defrauding Gryphon Investments Investors

42.    Morriss, Acartha Group, and Gryphon Investments defrauded Gryphon Investments investors by failing to disclose that Morriss and Acartha Group used their investment almost exclusively to fund Acartha Group's operations, provide loans to Morriss and Morriss Holdings, and service Morriss' personal debt. In addition, Morriss and Gryphon Investments represented to investors that Gryphon Investments would be the manager of ATP, when in reality Acartha Group acted as its manager.

43.    In 2008, Gryphon Investments raised funds through the sale of Series A Cumulative Preferred Shares. In May of 2008, Morriss represented to investors the investment opportunity in Gryphon Investments Series A Cumulative Preferred Shares included a 10% annual dividend, a portion of the company's carried interest from ATP's portfolio, and the right to convert the Gryphon Investments shares to limited partner interests in ATP. Morriss also told investors Gryphon Investments was the general partner and manager of ATP and that Gryphon

Investments would only use investor money to fund working capital and other Gryphon Investments expenditures.

44.     In reality, of the $3.75 million Gryphon Investments raised from investors between March 2008 and June 2009, Gryphon Investments transferred approximately $1.7 million to Morriss and Morriss Holdings for his personal use, $305,000 to pay interest on Morriss' personal line of credit, and approximately $1.6 million to Acartha Group. These transfers routinely occurred almost immediately after investors wired their funds. Morriss, Acartha Group, and Gryphon Investments did not disclose these transactions to investors or tell them Gryphon Investments would transfer their money as advances or personal loans to Morriss.

45.     In addition, unbeknownst to investors, in November 2008, Gryphon Investments outsourced its management of ATP to Acartha Group. Morriss also did not permit Gryphon Investments Series A Cumulative Preferred shareholders to convert their shares into limited partnership interests in ATP.

## V.     CLAIMS FOR RELIEF

### COUNT I

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### IN VIOLATION OF SECTION 17(a)(1) OF THE SECURITIES ACT
### (Against All Defendants)

46.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

47.     From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

13

48.     By reason of the foregoing, the Defendants directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act 15 U.S.C. § 77q(a).

## COUNT II

### FRAUD IN THE OFFER OR SALE OF SECURITIES
### IN VIOLATION OF SECTIONS 17(a)(2) and 17(a)(3) OF THE SECURITIES ACT
### (Against All Defendants)

49.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

50.     From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

51.     By reason of the foregoing, the Defendants directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT III

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
### IN VIOALTION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
### (Against All Defendants)

52.     The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

14

53. From as early as 2005 through 2011, the Defendants, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

54. By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT IV

### AIDING AND ABETTING VIOLATIONS
### OF SECTION 10(b) AND RULE 10b-5(b) OF THE EXCHANGE ACT
### (Against Morriss)

55. The Commission repeats and realleges paragraphs 1 through 45 of its Complaint.

56. From as early as 2005 through 2011, Acartha Group, MIC VII, ATP, and Gryphon Investments, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

57. Morriss, from as early as 2005 through 2011, knowingly or recklessly substantially assisted Acartha Group's, MIC VII's, ATP's, and Gryphon Investments' violations

of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

58.    By reason of the foregoing, Morriss, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT V

### FRAUD BY INVESTMENT ADVISORS IN VIOLATION OF
### SECTION 206(1) AND 206(2) OF THE ADVISERS ACT
### (Against Morriss, Acartha Group & Gryphon Investments)

59.    The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

60.    During the relevant time period, Morriss, Acartha Group, and Gryphon Investments were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(11).

61.    From as early as 2005 through 2011, Morriss, Acartha Group, and Gryphon Investments, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, while acting as an investment advisers, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud clients or prospective clients; (b) engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon clients or prospective clients; and (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

62.    By reason of the foregoing, Morriss, Acartha Group, and Gryphon Investments, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## COUNT VI

## AIDING AND ABETTING VIOLATIONS OF
## SECTIONS 206(1) AND 206(2) OF THE ADVISERS ACT
### (Against Morriss)

63.     The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

64.     During the relevant time period, Acartha Group and Gryphon Investments were investment advisers within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(11).

65.     From as early as 2005 through 2011, Acartha Group and Gryphon Investments, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, while acting as an investment advisers, knowingly, willfully, or recklessly: (a) employed devices, schemes, or artifices to defraud clients or prospective clients; (b) engaged in transactions, practices, and courses of business that operated as a fraud or deceit upon clients or prospective clients; and (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

66.     Morriss, from as early as 2005 through 2011, knowingly or recklessly substantially assisted Acartha Group's and Gryphon Investments' violations of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

67.     By reason of the foregoing, unless enjoined, Morriss is reasonably likely to continue to violate, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## COUNT VII

### FRAUD IN VIOLATION OF SECTION 206(4)
### AND RULE 206(4)-8(a)(2) OF THE INVESTMENT ADVISERS ACT
#### (Against Morriss, Acartha Group, and Gryphon Investments)

68.     The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

69.     From as early as 2005 through 2011, Morriss, Acartha Group, and Gryphon Investments, while acting as investment advisors, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly engaged in acts, practices or courses of business which are fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a pooled investment vehicle.

70.     By reason of the foregoing, Morriss, Acartha Group, and Gryphon Investments, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

## COUNT VIII

### AIDING AND ABETTING VIOLATIONS
### OF FRAUD IN VIOLATION OF SECTION 206(4)
### AND RULE 206(4)-8(a)(2) OF THE ADVISERS ACT
#### (Against Morriss)

71.     The Commission realleges and incorporates Paragraphs 1 through 45 of this Complaint.

72.     From as early as 2005 through 2011, Acartha Group, and Gryphon Investments, while acting as investment advisors, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly engaged in acts, practices or courses of business

18

which are fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in a pooled investment vehicle.

73.    Morriss, by engaging in the conduct described above, knowingly or recklessly substantially assisted Acartha Group's and Gryphon Investments' violations of Section 206(4) and Rule 206(4)-8(a)(2) of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

74.    By reason of the foregoing, Morriss directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 206(4) and Rule 206(4)-8 of the Advisers Act, 15 U.S.C. 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a)(2).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

## I.

## Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged herein.

## II.

## Injunctive Relief

Issue Permanent Injunctions, restraining and enjoining Morriss, Acartha Group, MIC VII, ATP, and Gryphon Investments, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and restraining and enjoining Morriss, Acartha Group, and Gryphon Investments, their agents, sales agents, servants, employees, attorneys, and all persons in active concert or participation

19

with them, and each of them, from directly or indirectly violating Sections 206(1), 206(2), 206(4), and 206(4)-8(a)(2) of Advisers Act.

## III.

### Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## IV.

### Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and as to Morriss, Acartha Group, and Gryphon Investments, pursuant to Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e).

## V.

### Officer and Director Bar

Issue an Order pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], barring Morriss from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## VI.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

January 17, 2011

Respectfully submitted,

By: _____

Adam L. Schwartz
Senior Trial Counsel
New York Bar No. 4288783
Direct Dial: (305) 982-6390
E-mail: schwartza@sec.gov

Robert K. Levenson
Regional Trial Counsel
Florida Bar No. 0089771
Direct Dial: (305) 982-6341
E-mail: levensonr@sec.gov

Brian T. James
Senior Counsel
Florida Bar No. 431842
Direct Dial: (305) 982-6335
E-mail: jamesb@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154