**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:12-CV-00080-CEJ |
| | ) |
| BURTON DOUGLAS MORRISS, *et al.*, | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| MORRISS HOLDINGS, LLC, | ) |
| | ) |
| Relief Defendant. | ) |
| | ) |

**RECEIVER'S TWELFTH INTERIM APPLICATION FOR ALLOWANCE
AND PAYMENT OF FEES AND EXPENSES INCURRED BY THE
RECEIVER, RETAINED COUNSEL, AND OTHER PROFESSIONALS**

Receiver Claire M. Schenk, in her capacity as receiver ("Receiver") for Acartha Group,
LLC ("Acartha"), MIC VII, LLC ("MIC"), Acartha Technology Partners, LP ("ATP"), and
Gryphon Investments III, LLC ("Gryphon") (collectively, the "Receivership Entities"), files her
*Twelfth Interim Application for Allowance and Payment of Expenses Incurred by the Receiver,
Counsel, and Other Professionals* (the "Application").

The Receiver requests that this Court (1) find that, for this Application, the total
professional fees and costs incurred during the period of October 1, 2014 through December 31,
2014 (the "Application Period") are reasonable and appropriate, and (2) enter an Order[1]
authorizing the Receiver to make payments for certain professional services and expenses
incurred during the Application Period.  The Receiver submitted the Application to the United
States Securities and Exchange Commission (the "SEC" or "Commission") for review and

---

[1] A proposed order is attached hereto as Exhibit E.

6112443.5

approval prior to submission to the Court.  The Commission has no objection to the Application.

A Standardized Fund Accounting Report ("SFAR"), which summarizes the Receivership account

balances as well as receipts and disbursements for this quarter, is attached hereto as <u>Exhibit A</u>.[2]

     The Receiver respectfully requests that the Court authorize the Receiver to pay reasonable

fees and costs incurred by the following retained professionals: (a) Thompson Coburn LLP

("Thompson Coburn"), the Receiver's primary counsel; (b) Segue Equity Group, LLC

("Segue"), the Receiver's investment fund manager; (c) CliftonLarsonAllen LLP ("CLA"), the

Receiver's accountant and tax preparer; and (d) Spencer Fane Britt & Browne LLP ("Spencer

Fane"), the Receiver's retained counsel for claims involving UHY Advisors MO, Inc.  While the

Receiver requests a finding that the total professional fees and costs incurred by these

professionals during the Application Period are reasonable and appropriate, for purposes of this

Application, the Receiver agreed, at the request of the SEC and pursuant to discussions with the

SEC, to request payment of only eighty percent (80%) of the legal and professional fees accrued

during the Application Period at this time, as opposed to the full amount of the invoiced fees.[3]

## I.  RETENTION OF RECEIVER, DISCLOSURE OF COMPENSATION, AND ACTIVITIES OF RECEIVER DURING APPLICATION PERIOD

     On January 17, 2012, the SEC filed its Complaint and Ex Parte Emergency Motion for

Appointment of Receiver.  On that same day, the Court granted the SEC's motion and entered

the Order Appointing Receiver ("Receivership Order") (Dkt. No. 16).  The Receiver's authority,

duties, and obligations are set forth in the Receivership Order.  The SEC's motion and the

Court's appointment were based upon the Receiver's proposal to the SEC (the "Proposal").  The

---

[2] A SFAR will be submitted in Final at the conclusion of the Receivership, following a reconciliation of receipts and disbursements occurring over the course of the Receivership.

[3] The remaining twenty percent (20%) of the legal and professional fees accrued during the Application Period which are not authorized for payment at this time are payable upon further application to this Court.

Proposal set out the qualifications of the Receiver and the support to be received from Thompson Coburn LLP as primary counsel to the Receiver.  Additionally, the Proposal fully disclosed the proposed compensation schedule and course of action contemplated by the Receiver (Dkt. No. 4, Exhibit 1).

The overall function of the Receiver as set out in the Receivership Order is to administer and manage the business affairs and assets of the Receivership Entities, act as the managing member or partner of the Receivership Entities, marshal and safeguard all of the assets of the Receivership Entities, and take such actions as are necessary to protect investors.  In furtherance of these objectives, paragraph 4 of the Receivership Order empowers the Receiver to "employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses."  Moreover, in addition to the authority granted in paragraph 4 of the Receivership Order, paragraph 5 provides that the Receiver may "[e]ngage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities" (Dkt. No. 16, at p. 3).

Pursuant to these authorities, and in keeping with paragraph 26 of the Receivership Order, the Receiver now files this Application for the Application Period, along with the requisite supporting documentation.  Submission of this Application is also supported by the information stated in each of the Receiver's Interim Status Reports.  These reports include descriptions of proposals, fee arrangements, and retainer agreements for the service professionals providing support to the Receiver for the benefit of the Receivership estate (*see* Dkt. Nos. 51, 134, 189, 232, 255, 260, 264, 286, 315, 328, 338, 358, 363, and 368). The Receiver submitted each of these reports to the Court for approval of all activities and actions described therein. The

first through twelfth reports, and the actions and activities described in such reports, have been approved by the Court (*see* Dkt. Nos. 61, 198, 224, 236, 267, 279, 280, 304, 336, 354, and 366). The Receiver's Thirteenth Interim Status Report was filed with the Court on February 4, 2015 (*see* Dkt. No. 368) and is pending Court review and approval.

The activities of the Receiver are guided by the Receivership Order, which requires the Receiver to, among other things: take immediate possession of and administer the assets of the Receivership Entities; investigate the manner in which the affairs of the Receivership Entities were conducted; institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary; defend, compromise or settle legal actions in which the Receivership Entities or the Receiver is a party; assume control of all of the Receivership Entities' financial accounts, as necessary; and make payments and disbursements from the funds and assets taken into control as necessary in discharging the Receiver's duties.

During the Application Period, the Receiver:

(i)  Continued to work with her retained counsel, Spencer Fane Britt & Brown LLP, to resolve claims involving UHY Advisors MO, Inc. ("UHY"), Patrick Stark, and Brian Peterson (collectively, the "UHY Parties"). As previously reported on October 6, 2014, the Honorable Wayne R. Anderson (Ret.) presided over a mediation proceeding which included the UHY Parties, the Receiver, and counsel. Although the matter did not resolve on that day, negotiations continued as and a result, the Receiver and the UHY Parties agreed to a monetary settlement, subject to execution of appropriate documentation and the approval of the Receivership Court.

(ii) Monitored criminal matters involving John Wehrle. On January 7, 2015, an indictment was returned against John Wehrle. The indictment states that Mr. Wehrle was a

founder and managing partner of venture capital companies, including Gryphon Investments II, LLC and Gryphon Holdings II, LLP (the "Gryphon entities"). It notes that as a managing partner, he raised funds and managed portfolio company investments, private equity funds, and co-investment vehicles. According to the indictment, funds from the corporate account of the Gryphon entities were withdrawn by John Wehrle and deposited into his personal bank account. The indictment further states that these monies were not reported on Mr. Wehrle's tax return. Additionally, the indictment states that Mr. Wehrle claimed that the distributions were loans and that he created and backdated documents in response to inquiries by the Internal Revenue Service ("IRS").

Based upon these allegations, the grand jury returned a four-count indictment charging that John Wehrle knowingly and willfully attempted to evade payment of income taxes for years 2008 and 2010 and that for those same years he submitted returns which underreported his income. On January 26, 2015, John Wehrle pled not guilty to the indictment and asked for additional time to review discovery and assess whether pretrial motions were appropriate. As previously reported, the Receiver has executed a series of tolling agreements with Mr. Wehrle. Mr. Wehrle has been advised of the Receiver's claims pertaining to the Receivership and the Gryphon entities. During this reporting period, the Receiver continued to review, evaluate, and pursue these claims.

(iii) Continued her efforts to resolve matters involving the Court-approved claims process. In particular, the Receiver finalized her notice of determination as to a late filed claim by a pre Receivership vendor and worked to resolve matters involving one of the objecting parties. In particular, subject again to negotiation of documentation and approval of the Court, the Receiver and UHY have reached an agreement pertaining to the disposition of the UHY

claim and pending objection.

(iv) Continued to manage the business interests of the Receivership Entities in the various portfolio company investments. The Receiver participated in board and shareholder calls involving the portfolio concerns, reviewed and analyzed periodic updates by management as to financials and operations involving the portfolio entities, and continued to explore liquidation opportunities.

Recently, one of the Receivership portfolio companies, Librato, negotiated and executed a merger agreement with SolarWinds, Inc.  Subject to the approval of the Court, the Receiver anticipates that there will be distributions to the Receivership entities and that funds will be disbursed as part of the claims distribution process.  Other monies will be distributed to the investors in the special purpose entities, again, subject to the approval of the Court.

(v) Issued 1099 forms for calendar year 2014 and completed other related IRS filings. An engagement letter for preparation of 2014 Receivership related tax returns was executed and submitted to the Court for review and approval.  The Receiver has also worked on other corporate compliance matters, in particular, handling of state filings through CT Corporation.

(vi) Continued to monitor and participate in the bankruptcy proceeding involving Burton Douglas Morriss, including the continued hearing of the creditors.

(vii) Continued to host, maintain, and update an enormous database of Receivership-related documents at no cost to the Receivership Estate, along with a website (which is public) and a confidential investor extranet site (which is confidential and password protected).

## II.  REQUEST FOR FEES AND EXPENSES

The Receiver, her counsel, accountants, and fund manager worked diligently to marshal and preserve all assets of the Receivership Entities, investigate their business operations, and

compile information that the Receivership Entities may use to prosecute the Receiver's claims in litigation and resolve claims asserted against the Receivership Entities.  The Receiver has continued to recover funds, to pursue and resolve claims-related matters, and handle the business interests of the Receivership Entities.  Thus, the Receiver respectfully requests an award for legal and other professional fees and the reimbursement of certain expenses incurred on behalf of the Receiver for services rendered during the Application Period, as well as a finding that these legal and professional fees and costs are reasonable and appropriate. These amounts total $64,991.43 in the aggregate (the "Total Award"). The Total Award is comprised of: $58,690.90 in legal fees and costs for Thompson Coburn, the Receiver's primary counsel; (b) $2,241.17 in professional fees for Segue, the Receiver's investment fund manager; (c) $2,997.50 in professional fees for CLA, the Receiver's tax preparer and valuation consultant; and (d) $1,061.86 in costs for Spencer Fane, the Receiver's retained counsel for UHY affirmative claims matters.

Significantly, the Receiver and many of the professionals working with her performed services at deeply discounted rates.  This discount has increased over time because billable rates for most of the Receiver's professionals have, to date, not been increased to reflect standard annual increases in billable rates.  Similar to previous application periods, the Receiver did not impose a fee for hosting a voluminous database of documents pertaining to the Receivership.  In supplying documents to the Receiver's outside counsel, the Receiver did not include charges for non-attorney searches of her internal database or for updating and maintaining this system. Also, the informational website created and updated by the Receiver's firm (and linked to the website for the District Court for the Eastern District of Missouri) continues to be available to the public without cost to the Receivership Entities.  Investor websites, available only to an investor who has signed a nondisclosure agreement and who has demonstrated an equity interest in the entity

that is the subject of the particular website, are also hosted by the Receiver's firm without charge to the investors.  These websites serve as an economical and secure way of providing information to the investors concerning their individual investment interests.[4]  The Receiver has also utilized valuable assistance from library personal during this reporting period at no cost to the Receivership.

As noted above, although the Receiver seeks a finding that the Total Award is reasonable and appropriate, the Receiver seeks Court permission to pay less than the Total Award at this time.  Specifically, the Receiver seeks permission to pay eighty percent (80%) of the legal and professional fees and one hundred percent (100%) of the costs incurred during the Application Period as follows: (a) $46,359.68 in legal fees and $741.30 in costs for Thompson Coburn; (b) $1,792.94 in professional fees for Segue; (c) $2,398.00 in professional fees to CLA; and (d) $1,061.86 in costs to Spencer Fane.  Therefore, although the Total Award sought is $64,991.43, the total requested payment at this time is $52,353.78.  The Receiver is asking for payment of the reduced amount at this time, at the request of and pursuant to discussions with the SEC.

This request is the Receiver's twelfth application to the Court for compensation and reimbursement of expenses for services rendered on behalf of the Receiver.[5]  In reviewing the fees paid to the Receiver's counsel, Thompson Coburn, it is important to note that a substantial portion of the fees paid to Thompson Coburn prior to June of 2013 were reimbursed to the accounts of the Receivership Entities.  As previously reported, funds in the amount of $487,300.00 were successfully recovered as part of the settlement of an Interpleader Action involving a D&O liability policy obtained by one of the Receivership Entities.  All of these funds

---

[4] Third-party vendors are utilized by other Receivers and attorneys for the functions described in this paragraph, often at substantial costs.

[5] For a summary of previous fee applications and the status of the applications, *see* Exhibit F.

were deposited into Receivership accounts and none of these funds were used to directly pay the Receiver's attorneys or to satisfy the twenty percent holdback imposed at the outset of this proceeding.

No understanding exists between the Receiver and any other person for the sharing of compensation sought by this Application, except among the partners and associates of the firms retained by the Receiver.   In support of the efforts performed on behalf of the Receiver, the Receiver has attached Exhibits to her Application consisting of:

Exhibit A:  Fourth Quarter 2014 SFAR

Exhibit B:  Certification

Exhibit C:  Summaries of professional and paraprofessional time and fees

Exhibit D:  Individualized and detailed invoices of all services rendered, expenses, and disbursements for Thompson Coburn, Segue, CLA, and Spencer Fane

Exhibit C contains an aggregate summary of all hours and fees of all professionals and paraprofessionals that provided services to the Receiver during the Application Period. The total amount represents the amount of time expended by each attorney, paralegal, and professional multiplied by the applicable hourly rate.  Exhibit D contains individualized and detailed descriptions of the daily services rendered and the hours expended by the various attorneys, paralegals, and professionals employed on behalf of the Receiver in this case during the Application Period.  Exhibit D also contains a detailed schedule listing the expenses and disbursements for which the Receiver seeks reimbursement. Exhibit D is based on, among other information, the contemporaneous daily time records maintained by the Receiver's attorneys, paralegals, and professionals who rendered services in this case.[6] The Receiver has reviewed and

---

[6] Certain redactions to these records have been made because of work product and privilege concerns and to protect the confidentiality of investors and investment concerns.

approved these time records, and based on the complexity of the case, the Receiver respectfully submits that the requested compensation is reasonable.

### III.   MEMORANDUM OF LAW IN SUPPORT OF REQUEST

Under governing law, following a determination that services were rendered and costs expended in furtherance of the Receivership, the Court may award compensation for the presented fees and costs. When determining an award of attorneys' fees, the Court should use the lodestar method of multiplying the number of hours reasonably expended by the reasonable hourly rate. *S.E.C. v. Petters*, No. 09-1750 ADM/JSM, 2009 WL 3379954, at *3 (D. Minn. Oct. 20, 2009) (citing *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002)).   A reasonable hourly rate is the ordinary fee for similar work in the community.  *Petters*, 2009 WL 3379954, at *3 (quoting *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)); *see also Fish*, 295 F.3d at 851 ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.").  The Receiver respectfully suggests that for the reasons stated herein and based upon the background information regarding rates and qualifications set forth in the Proposals and the Interim Status Reports, this request for fees for payment of the Receiver's attorneys and other professionals meets the criteria for this interim compensation.

In this case, the Court's Receivership Order requires the Receiver to "administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court" (Dkt. No. 16, at p. 2).   The Receivership Order allows the Receiver to: (i) appoint "one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses

of taking possession of the assets and business" (Dkt. No. 16, at p. 3); and (ii) "engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities" (*id.*). The Court further authorized payment of the Receiver's counsel from the funds held by the Receivership (*see*, Dkt. No. 16, at p. 6), and empowered the Receiver to "make or authorize such payments and disbursements from the funds taken into control, or thereafter received by the Receiver . . . as may be reasonable, necessary, and advisable in discharging the Receiver's duties" (*id.* at p. 4).

The Receiver's attorneys, paralegals, accountants, and experts have incurred reasonable fees and costs consistent with the Court's orders, and payment is appropriate and warranted in consideration under applicable Eighth Circuit case law.

WHEREFORE, the Receiver respectfully requests that this Court enter the Order submitted herewith and marked as <u>Exhibit E</u>:

(i) finding that the Total Award is reasonable and appropriate;

(ii) authorizing an award of fees and costs in the amount of $52,353.78;

(iii) directing the Receiver to make payments as follows based upon the authority submitted by the Receiver in support of this Application and allowing payment to be made from any one or more of the accounts listed on <u>Exhibit A</u>: (a) $46,359.68 in legal fees (representing eighty percent (80%) of invoiced fees) and $741.30 in costs for Thompson Coburn; (b) $1,792.94 in professional fees (representing eighty percent (80%) of invoiced fees) for Segue; (c) $2,398.00 in professional fees (representing eighty percent (80%) of invoiced fees) for CLA; and (d) $1,061.86 in costs for Spencer Fane; and

(iv) providing for such other relief as is appropriate under the circumstances.

Dated: February 16, 2015                    Respectfully Submitted,

                                            THOMPSON COBURN LLP


                                            By_____/s/ Kathleen E. Kraft_____
                                                Stephen B. Higgins, #25728MO
                                                Brian A. Lamping, #61054MO
                                                One US Bank Plaza
                                                St. Louis, Missouri 63101
                                                Phone: (314) 552-6000
                                                Fax: (314) 552-7000
                                                shiggins@thompsoncoburn.com
                                                blamping@thompsoncoburn.com


                                                Kathleen E. Kraft, #58601MO
                                                1909 K Street, NW, Suite 600
                                                Washington, DC 20006
                                                Phone: (202) 585-6922
                                                Fax: (202) 508-1035
                                                kkraft@thompsoncoburn.com

### CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2015, I electronically filed the foregoing with the Clerk of the Court through the Court's CM/ECF system which will send a notice of electronic filing to the following:

John R. Ashcroft, Esq.
Ashcroft Hanaway LLC
222 South Central Ave., Suite 110
St. Louis, Missouri 63105
*Counsel for Defendant Burton Douglas Morriss*

Robert K. Levenson
Brian T. James
Securities and Exchange Commission
801 Bricknell Avenue, Suite 1800
Miami, Florida 33131
*Attorneys for Plaintiff*


                                            /s/    Kathleen E. Kraft_____