UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:12-cv-00080-CEJ ) |
| BURTON DOUGLAS MORRISS, et al., | ) ) |
| Defendants, and | ) ) |
| MORRISS HOLDINGS, LLC, | ) ) |
| Relief Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S
MOTION TO APPROVE SETTLEMENT OF CLAIMS**

In keeping with the principal objectives of the Receivership, *i.e.*, to administer and manage the business affairs, funds, assets, choses in action, and other property of the Receivership Entities, to marshal and safeguard the Receivership assets, and to take such actions as are necessary for the protection of the investors, the Receiver respectfully requests that the Court enter an Order approving the Receiver's Agreement to Compromise, Settle and Release Claims ("the Agreement") involving UHY Advisors MO, Inc. ("UHY"), Patrick Stark ("Stark"), and Brian Peterson ("Peterson") (collectively, the "UHY Parties").

I. **Background**

    A.  The Receivership

On January 17, 2012, the United States Securities and Exchange Commission (the "SEC") filed its *Complaint for Injunctive and Other Relief* (the "Complaint") against Burton Douglas Morriss ("Morriss"), Acartha Group, LLC ("Acartha"), Acartha Technology Partners,

L.P. ("ATP"), MIC VII, LLC ("MIC"), Gryphon Investments III, LLC ("Gryphon" and together with Acartha, ATP and MIC, the "Receivership Entities") and Morriss Holdings, LLC ("Morriss Holdings")[1] in this Court as Case No. 4:12-cv-00080-CEJ (the "SEC Case"). *See* Complaint (ECF No. 1). In the Complaint and other papers filed by the SEC on January 17, 2012, the SEC alleged various securities laws violations by the SEC Defendants.

Also, on January 17, 2012, the SEC moved for the immediate appointment of a receiver over the Receivership Entities to (i) administer and manage the business affairs, funds, assets, choses in action and other property of the Receivership Entities, (ii) act as sole and exclusive managing member or partner of the Receivership Entities, (iii) maintain sole authority to administer any and all bankruptcy cases in the manner determined to be in the best interests of the Receivership Entities' estates, (iv) marshal and safeguard all of the assets of the Receivership Entities, and (v) take whatever actions are necessary for the protection of investors. The Court entered the requested relief by order dated January 17, 2012 (the "Receivership Order"). *See* Receivership Order (ECF No. 16).

As established in the Receivership Order, the Receiver is charged with

tak[ing] immediate possession of all property, assets and estate of every kind of the [Receivership] Entities whatsoever and wheresoever located, including but not limited to all offices maintained by the [Receivership] Entities'[,] **rights of action**, books, papers, data processing records, evidence of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the [Receivership] Entities, wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further Order of this Court…"

---

[1] Morriss, Acartha, ATP, MIC, Gryphon, and Morriss Holdings are collectively referred to as the "SEC Defendants."

Receivership Order, p. 2 (emphasis added). The Receiver also is "authorized, solely and exclusively, to operate and manage the businesses and financial affairs of [the Receivership Entities] and the Receiver Estates." Receivership Order, p. 8.

Pursuant to paragraph 2 of the Receivership Order, the Receiver is directed to investigate the manner in which the affairs of the investment entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities, as the Receiver deems necessary against those individuals and entities that the Receiver may claim have directly or indirectly misappropriated or transferred monies. As authorized by paragraph 6 of the Receivership Order, the Receiver may defend, compromise or settle legal actions in which the Receivership Entities are parties, with authorization of the Court. In keeping with the directives of the Court and the authorities granted to the Receiver, the Receiver now seeks to compromise and settle the claims of the Receivership entities against the UHY Parties.

B. <u>Analysis of Affirmative Legal Claims and Claims Process</u>

Upon appointment, the Receiver learned that UHY had performed services for the Receivership Entities in its capacity as a business providing accounting and tax services. Those services were rendered by UHY employees, including Peterson and Stark. Peterson is a Missouri Certified Public Accountant ("CPA"), licensed to practice in the state of Missouri and served at UHY as a Senior Manager at UHY's offices in St. Louis County, Missouri. Stark was also a CPA working in UHY's offices in St. Louis County, Missouri where he served as a Managing Director and a board member of UHY. By 2007, UHY was preparing tax returns for various Receivership Entities. On or before March of 2009, UHY assumed accounting responsibilities for the Receivership Entities pursuant to engagement letters dated March 3, 2009 and March 5, 2011. Stark and UHY designated Peterson to principally perform the work. UHY continued to

perform accounting work for the Receivership Entities until shortly before the Receivership commenced.

The Receivership began following the filing of the SEC complaint against the SEC Defendants. In this proceeding, the SEC alleged that Morriss misappropriated substantial sums from the Receivership Entities without the knowledge of the investors. Although the Receivership proceeding is ongoing, the SEC allegations against Morriss were resolved with the entry of a permanent injunction and consent judgment on August 13, 2013. Final judgment was entered against Morriss on February 26, 2014, in the amount of $9,516,090.71.

The Receiver, consistent with her appointment, has asserted certain civil claims that she believes she has against UHY, Stark, and Peterson on behalf of the Receivership Entities, arising out of alleged acts and omissions of UHY, Stark, and Peterson in the provision of professional services to the Receivership Entities, during the period March 3, 2009 until shortly before the commencement of the Receivership (the "Receiver's Claims"). These claims were asserted on behalf of the Receiver by the Receiver's retained counsel, Gerald P. Greiman and Richard Lageson of Spencer Fane Britt & Brown LLP ("retained counsel") pursuant to an engagement letter executed on September 13, 2013 (the "engagement letter"). Under the terms of the engagement letter, retained counsel agreed to provide services subject to the SEC billing guidelines and under the terms of the contingent fee arrangement set forth in the engagement letter.[2] As required under the engagement letter, the arrangement was submitted for Court approval on October 31, 2013 as part of the Receiver's Eighth Interim Status Report (ECF No. 286). The engagement letter was approved by the Court on December 13, 2013 (ECF No. 304).

---

[2] After consulting with SEC Counsel, the Receiver determined that litigation and the proposed arrangement as set forth in the engagement letter was reasonably likely to produce a net economic benefit to the estate and that the contingent fee arrangement was in the best interests of the Receivership Entities.

In response to the claims asserted by retained counsel on behalf of the Receiver, the UHY Parties denied any wrongdoing, misconduct, or liability to the Receivership Entities related to their provision of professional services to the Receivership Entities. On or about May 3, 2013, UHY filed a proof of claim form in the Receivership Proceedings, asserting a claim against the Receivership Entities in the amount of $220,060 for professional accounting services provided by UHY to the Receivership Entities ("Claim No. 16"). On January 13, 2014, the Receiver issued her final notice of determination on Claim No. 16, recommending that the Receivership Court disallow Claim No. 16 (the "Notice of Determination"). Following receipt of the Notice of Determination, UHY filed its objection (ECF No. 332).

Following the assertion of the Receiver's Claims and the filing of UHY's objection to the Receiver's Notice of Determination, the Receiver and the UHY Parties engaged in settlement negotiations, including an agreed-upon mediation with the Hon. Wayne Andersen, a retired U.S. District Court Judge, through the services of JAMS, Inc. Prior to the mediation, the parties submitted statements describing their respective positions along with relevant documentation. During and following the mediation, the parties explored the strengths and weaknesses of their claims and damages theories with the mediator. Following these extensive settlement negotiations, the Receiver and the UHY Parties ultimately agreed to accept the settlement figure recommended to the parties by the mediator. Subsequent to that preliminary agreement, the Receiver and the UHY Parties worked diligently to negotiate settlement documentation culminating in the Agreement attached hereto as <u>Exhibit A</u>.

In the Agreement, the UHY Parties agree to a payment of $2.3 million and the Receiver agrees to withdraw the Notice of Determination recommending that the Court disallow Claim No. 16. Pursuant to the engagement letter, 25 percent of that sum, *i.e.,* $575,000, will be paid

directly to retained counsel. The remaining sum, $1,725,000, will be paid to the accounts of the Receivership Entities. There is no agreement between the UHY Parties and the Receiver as to whether or not UHY will receive any portion of the funds which ultimately may be distributed in this proceeding. The Agreement includes a mutual release. The parties acknowledge that the Agreement is subject to Court approval.

The Receiver now seeks the approval of the Court based upon her belief that effectuation of the Agreement under the terms and conditions stated therein is in the best interests of the Receivership estate. The Agreement avoids the potential for long and protracted litigation, along with the risk that is inherent for both the Receiver and the UHY Parties. Resolution of this potential litigation and the Receiver's Claims against the UHY Parties is another step in the direction of closure of the Receivership proceeding, which will ultimately allow the disposition of accumulated funds to investors and other claimants. Approval of the Agreement will avoid the time and expense incurred as a necessary part of related oversight of the litigation by the Receiver as well as the expense associate with the litigation. Expenses associated with the litigation would necessarily include deposition costs, transcripts, travel expense, copying costs, and expert witness fees.

**II. Argument**

Pursuant to the Receivership Order, the Court authorized the Receiver to, among other things, administer and manage the business affairs, funds, assets, choses in action, and other property of the Receivership Entities, marshal and safeguard the assets of the Receivership Entities, and take such actions as are necessary for the protection of investors. *See* Receivership Order, p. 1; *see also Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (receiver's "object is to maximize the value of the [Receivership assets] for the benefit of their investors and any

creditors"). The Court also authorized the Receiver to take immediate possession of all property, assets, and estates of every kind of the Receivership Entities whatsoever and wheresoever located, and hold such assets pending further order of the Court. *See* Receivership Order, p. 2.

Now, in the execution of her sole and exclusive duty to manage the assets of the Receivership Entities and maximize the value of those assets for the benefits of the investors and any creditors, the Receiver seeks Court approval of the Agreement. The funds recovered under the terms of the Agreement will increase the liquid assets of the Receivership estate, maximize the possibility of a distribution to investors, and help fund the Receivership's pursuit of recoveries against third-parties. It also will reduce the cost to the Receivership estate of managing and monitoring ongoing litigation.

A court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *Sec. & Exch. Comm'n v. Goldfarb,* No. C 11-00938 WHA, 2013 WL 4504271, at *2 (N.D. Cal. Aug. 21, 2013). Consequently, "[i]t is a recognized principle of law that a district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *Id*. In similar situations, courts have deferred to a Receiver's business and legal judgment, allowing a compromise that is fair and falls within the "range of reasonableness." *S.E.C. v. Ruderman*, No. 2:09-CV-02974-ODW, 2013 WL 153266, at *2 (C.D. Cal. Jan. 15, 2013). This range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*. While the court may not simply "rubber-stamp" the parties' decision to enter into a settlement agreement, it also need not "conduct an exhaustive investigation, hold a mini-trial on the merits of the claims sought to be compromised, or require that the settlement be the

best that could possibly be achieved." *Id*. The trial court "need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." *Id.; see also S.E.C. v. Arkansas Loan & Thrift Corp.*, 427 F.2d 1171 (8th Cir. 1970) (affirming district court's approval of the Receiver's settlement agreement); *S.E.C. v. Parish*, No. 2:07-CV-00919-DCN, 2010 WL 8347143, at *1 (D.S.C. Apr. 8, 2010) (granting Receiver's motion to approve the settlement agreement); *accord S.E.C. v. Temme*, No. 4:11-CV-655, 2014 WL 1493399, at *1 (E.D. Tex. Apr. 16, 2014).

Under the circumstances and based upon the recommendation of the mediator, the Receiver believes that the terms and conditions of the Agreement are reasonable, in the best interests of the Receivership, and will be beneficial to the investors and creditors of the Receivership Entities. In preparation for, during, and following the mediation, the Receiver and the UHY Parties submitted voluminous amounts of documentation for consideration of the mediator and offered their respective views of the Receiver's Claims and UHY's defenses and its Claim No. 16. As a result, the mediator issued a considered recommendation and the parties chose to rely upon this recommendation. Moreover, effectuation of the Agreement will increase the amount of funds available for a potential distribution to investors and provide a source of cash to fund the operations of the Receivership.

### III. <u>Service of the Motion</u>

The Receiver is serving a copy of this motion on all counsel of record. Out of an abundance of caution, the Receiver also is serving interested parties (the "Interested Parties") via electronic mail. The Receiver considers the Interested Parties to be those persons or entities who filed claims with the Receiver that have been recommended for allowance or are the subject of

pending determination objections before the Court.  Furthermore, as she has done with previous motions, the Receiver will post a copy of the motion on the Receivership's website.

**IV. Conclusion**

For all the foregoing reasons, the Receiver respectfully requests that the Court enter an Order approving the Agreement (Exhibit A).  A proposed Order is attached hereto as Exhibit B.

Dated: June 26, 2015                             Respectfully Submitted,

                                                  THOMPSON COBURN LLP

                                                 By   /s/ Kathleen E. Kraft
                                                       Stephen B. Higgins, #25728MO
                                                       Brian A. Lamping, #61054MO
                                                       One US Bank Plaza
                                                       St. Louis, Missouri 63101
                                                       Phone: (314) 552-6000
                                                       Fax: (314) 552-7000
                                                       shiggins@thompsoncoburn.com
                                                       blamping@thompsoncoburn.com

                                                       Kathleen E. Kraft, #58601MO
                                                       1909 K Street, NW, Suite 600
                                                       Washington, DC 20006
                                                       Phone: (202) 585-6922
                                                       Fax: (202) 508-1035
                                                       kkraft@thompsoncoburn.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2015, I electronically filed the foregoing with the Clerk of the Court through the Court's CM/ECF system which will send a notice of electronic filing to all parties receiving electronic service.

I further certify that I caused service of the foregoing document via electronic mail on all Interested Parties (as defined in the foregoing document).

/s/ Kathleen E. Kraft