UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BURTON DOUGLAS MORRISS, *et al.*, ) <br> ) <br> Defendants, and ) <br> ) <br> MORRISS HOLDINGS, LLC, ) <br> ) <br> Relief Defendant. ) <br> ) | Case No. 4:12-CV-00080-CEJ |

**RECEIVER'S FOURTEENTH INTERIM APPLICATION FOR ALLOWANCE
AND PAYMENT OF FEES AND EXPENSES INCURRED BY THE
RECEIVER, RETAINED COUNSEL, AND OTHER PROFESSIONALS**

Receiver Claire M. Schenk, in her capacity as receiver ("Receiver") for Acartha Group, LLC ("Acartha"), MIC VII, LLC ("MIC"), Acartha Technology Partners, LP ("ATP"), and Gryphon Investments III, LLC ("Gryphon") (collectively, the "Receivership Entities"), files her *Fourteenth Interim Application for Allowance and Payment of Expenses Incurred by the Receiver, Counsel, and Other Professionals* (the "Application").  The Receiver's Thirteenth Fee Application was filed on May 11, 2015 (Dkt. No. 386) and was followed by the Receiver's Notice of No Objection filed on May 27, 2015 (Dkt. No. 391).  The Twelfth and Thirteenth Fee Applications were approved by the Court on June 15, 2015 (Dkt. Nos. 393 and 394).  Expenses and fees approved in the Twelfth and Thirteenth Applications[1] have been paid by the Receiver.

---

[1] The Court's Order approving the Thirteenth Fee Application authorized payment of $1,225.00 in professional fees and $568.11 in costs (totaling an authorized payment of $1,793.11) to CliftonLarsonAllen LLP ("CLA").  When preparing payment to CLA, the Receiver was alerted to a clerical error in the calculation of the professional fees and costs that had been requested for the Court's approval.  A charge of $82.50 was incorrectly listed as a cost (which is not subject to the holdback), however, the sum should have been included as a professional fee (which would be paid at 80%).  After re-categorizing the $82.50 charge, the Receiver paid CLA $1,776.61 ($1,291.00 for professional fees and $485.61 in costs).  As such, in this Application, the Receiver seeks *nunc pro tunc* approval of the minor reallocation of fees versus expenses paid by the Receiver to CLA.

The Receiver requests that this Court (1) find that, for this Application, the total professional fees and costs incurred during the period of April 1, 2015 through June 30, 2015 (the "Application Period") are reasonable and appropriate, and (2) enter an Order[2] authorizing the Receiver to make payments for certain professional services and expenses incurred during the Application Period and approving *nunc pro tunc* the Receiver's reallocation between fees and expenses to the payment made to CLA pursuant to the Thirteenth Fee Application and subsequent order. The Receiver submitted the Application to the United States Securities and Exchange Commission (the "SEC" or "Commission") for review and approval prior to submission to the Court. The Commission has no objection to the Application. A Standardized Fund Accounting Report ("SFAR"), which summarizes the Receivership account balances as well as receipts and disbursements for this quarter, is attached hereto as Exhibit A.[3]

The Receiver respectfully requests that the Court authorize the Receiver to pay reasonable fees and costs incurred by the following retained professionals: (a) Thompson Coburn LLP ("Thompson Coburn"), the Receiver's primary counsel; (b) Segue Equity Group LLC ("Segue"), the Receiver's investment fund manager; and (c) CLA, the Receiver's accountant and tax preparer. While the Receiver requests a finding that the total professional fees and costs incurred by these professionals during the Application Period are reasonable and appropriate, for purposes of this Application, the Receiver agreed, at the request of the SEC and pursuant to discussions with the SEC, to request payment of only eighty percent (80%) of the legal and professional fees accrued during the Application Period at this time, as opposed to the full amount of the invoiced fees.[4]

---

[2] A proposed order is attached hereto as Exhibit E.

[3] A SFAR will be submitted in Final at the conclusion of the Receivership, following a reconciliation of receipts and disbursements occurring over the course of the Receivership.

I.  **RETENTION OF RECEIVER, DISCLOSURE OF COMPENSATION, AND ACTIVITIES OF RECEIVER DURING APPLICATION PERIOD**

On January 17, 2012, the SEC filed its Complaint and Ex Parte Emergency Motion for Appointment of Receiver.  On that same day, the Court granted the SEC's motion and entered the Order Appointing Receiver ("Receivership Order") (Dkt. No. 16).  The Receiver's authority, duties, and obligations are set forth in the Receivership Order.  The SEC's motion and the Court's appointment were based upon the Receiver's proposal to the SEC (the "Proposal").  The Proposal set out the qualifications of the Receiver and the support to be received from Thompson Coburn as primary counsel to the Receiver.  Additionally, the Proposal fully disclosed the proposed compensation schedule and course of action contemplated by the Receiver (Dkt. No. 4, Exhibit 1).

The overall function of the Receiver as set out in the Receivership Order is to administer and manage the business affairs and assets of the Receivership Entities, act as the managing member or partner of the Receivership Entities, marshal and safeguard all of the assets of the Receivership Entities, and take such actions as are necessary to protect investors.  In furtherance of these objectives, paragraph 4 of the Receivership Order empowers the Receiver to "employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses."  Moreover, in addition to the authority granted in paragraph 4 of the Receivership Order, paragraph 5 provides that the Receiver may "[e]ngage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities" (Dkt. No. 16, p. 3).

Pursuant to these authorities, and in keeping with paragraph 26 of the Receivership Order, the Receiver now files this Application for the Application Period, along with the

---

[4] The remaining twenty percent (20%) of the legal and professional fees accrued during the Application Period that are not authorized for payment at this time are payable upon further application to this Court.

requisite supporting documentation.  Submission of this Application is also supported by the information stated in each of the Receiver's Interim Status Reports.  These reports include descriptions of proposals, fee arrangements, and retainer agreements for the service professionals providing support to the Receiver for the benefit of the Receivership estate (*see* Dkt. Nos. 51, 134, 189, 232, 255, 260, 264, 286, 315, 328, 338, 358, 363, 368 and 383). The Receiver submitted each of these reports to the Court for approval of all activities and actions described therein. The first through fourteenth reports, and the actions and activities described in such reports, have been approved by the Court (*see* Dkt. Nos. 61, 198, 224, 236, 267, 279, 280, 304, 336, 354, 366 and 395).   The Receiver's Fifteenth Interim Status Report was filed with the Court on July 24, 2015 (*see* Dkt. No. 402) and is pending Court review and approval.

The activities of the Receiver are guided by the Receivership Order, which requires the Receiver to, among other things: take immediate possession of and administer the assets of the Receivership Entities; investigate the manner in which the affairs of the Receivership Entities were conducted; institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary; defend, compromise or settle legal actions in which the Receivership Entities or the Receiver is a party; assume control of all of the Receivership Entities' financial accounts, as necessary; and make payments and disbursements from the funds and assets taken into control as necessary in discharging the Receiver's duties.

During the Application Period, the Receiver:

(i) Worked successfully with her retained contingent fee counsel, Spencer Fane Britt & Brown LLP, to finalize all terms of the settlement agreement resolving the Receiver's claims against UHY Advisors MO, Inc. ("UHY"), Patrick Stark, and Brian Peterson (collectively, the

"UHY Parties") in return for a payment of $2,300,000.  The Agreement was executed by the UHY Parties on June 26, 2015 and submitted to the Court along with the Receiver's Motion to Approve Settlement of Claims (Dkt. 399).[5]

(ii) Responded to the defendants' motion to dismiss various counts of the complaint in the suit against John Wehrle, Gryphon Investments, II, LLC ("Gryphon II"), and Cirqit.Com, Inc. ("Cirqit").  The motion to dismiss is now fully briefed.  The Receiver also worked with defendants to prepare the parties' Joint Proposed Scheduling Order.  Additionally, the Receiver reviewed and analyzed information pertinent to mandatory disclosure and discovery in this proceeding. The Receiver has also continued to monitor the criminal matter involving Mr. Wehrle.

(iii) Continued her efforts to resolve matters involving the Court-approved claims process, focusing upon the remaining three objections: The first fully briefed objection involves Blink Marketing ("Blink"), Claimant No. 22.  The briefing of this matter was completed on June 19, 2015, with the filing of the Receiver's response to the objection of Blink Marketing.  The second fully briefed objection pending before the Court pertains to Hany Teylouni (former management), Claim No. 20 (*see* Dkt. No. 337).  Finally, as part of the Court-approved settlement of claims involving the UHY Parties, the Receiver and UHY have reached an agreement pertaining to the disposition of the UHY claim and pending objection.

(iv) Continued to manage the business interests of the investors and the Receivership Entities in the various portfolio company investments. The Receiver participated as an observer in meetings involving the portfolio concerns, reviewed and analyzed periodic updates by

---

[5] On July 21, 2015, the Court was advised that no objections were received (Dkt. 401) and the Motion was approved on July 27, 2015.

management as to financials and operations involving the portfolio entities, and continued to explore liquidation opportunities.

Following the previously reported merger and acquisition involving Librato, one of the Receivership portfolio companies, the Receiver collected the initial distribution and reviewed investor interests for purposes of disbursements.[6]  The Receiver is working upon a plan for disbursement to the investors in the non-Receivership entities, *i.e.*, Evergrid Acquisition, LLC, Evergrid/MIC VII, LLC, and Librato Acquisition II, LLC (the "SPVs").  The plan of distribution will also be made subject to Court approval.   The funds allocated to ATP and MIC VII will be disbursed as part of the claims distribution process, subject to the approval of the Court.

(v) Worked closely with the Receiver's accountants to develop information pertinent to the filing of the 2014 Receivership returns. Assessments and issues involving various states' tax matters were handled. Also, during this reporting period, the Receiver reviewed and processed payments for nineteen entities for Delaware franchise taxes and resolved other tax and compliance issues involving state claims.

(vi) Continued to participate in the bankruptcy proceeding involving Burton Douglas Morriss.  The deadline for objections to the discharge of the debtor was extended until October 30, 2015.  Further extensions are unlikely.  The Receiver and her counsel have been assessing and analyzing the appropriate course of action in view of the available information.

(vii) Continued to search, host, maintain, and update an enormous database of Receivership-related documents at no cost to the Receivership estate, along with a website (which is public) and a confidential investor extranet site (which is confidential and password-protected).

---

[6] Funds were received in the total amount of $1,459,642.99, as follows:  ATP, $164,662.33; MIC VII, $438,998.08; Evergrid Acquisition, LLC, $16,270.84; Evergrid/MIC VII, LLC, $87,404.75; Librato Acquisition II, LLC, $752,306.99.  The remaining funds in escrow total $191,042.96

## II. REQUEST FOR FEES AND EXPENSES

The Receiver, her counsel, accountants, and fund manager worked diligently to marshal and preserve all assets of the Receivership Entities, investigate their business operations, and compile information that the Receivership Entities may use to prosecute the Receiver's claims in litigation and resolve claims asserted against the Receivership Entities.  The Receiver has continued to recover funds, to pursue and resolve claims-related matters, and handle the business interests of the Receivership Entities.  Thus, the Receiver respectfully requests an award for legal and other professional fees and the reimbursement of certain expenses incurred on behalf of the Receiver for services rendered during the Application Period, as well as a finding that these legal and professional fees and costs are reasonable and appropriate. These amounts total $144,618.26 in the aggregate (the "Total Award"). The Total Award is comprised of: $134,520.62 in legal fees and costs for Thompson Coburn, the Receiver's primary counsel; (b) $1,579.14 in professional fees for Segue, the Receiver's investment fund manager; and (c) $8,518.50 in professional fees and costs for CLA, the Receiver's tax preparer and valuation consultant.

Significantly, the Receiver and many of the professionals working with her performed services at deeply discounted rates.  This discount has increased over time because billable rates for most of the Receiver's professionals have, to date, not been increased to reflect standard annual increases in billable rates.  Additionally, the Receiver's primary counsel, Thompson Coburn, provided many hours of legal and other services that were not billed to the Receivership estate, including the work of summer associates and other professionals who are provided assistance with research and document retrieval and analysis.

Similar to previous application periods, the Receiver did not impose a fee for hosting a voluminous database of documents pertaining to the Receivership.  Also, the informational

website created and updated by the Receiver's firm (and linked to the website for the District Court for the Eastern District of Missouri) continues to be available to the public without cost to the Receivership Entities. Investor websites, available only to an investor who has signed a nondisclosure agreement and who has demonstrated an equity interest in the entity that is the subject of the particular website, are also hosted by the Receiver's firm without charge to the investors. These websites serve as an economical and secure way of providing information to the investors concerning their individual investment interests.[7]

As noted above, although the Receiver seeks a finding that the Total Award is reasonable and appropriate, the Receiver seeks Court permission to pay less than the Total Award at this time. Specifically, the Receiver seeks permission to pay eighty percent (80%) of the legal and professional fees and one hundred percent (100%) of the costs incurred during the Application Period as follows: (a) $107,331.85 in legal fees and $355.80 in costs for Thompson Coburn; (b) $1,263.31 in professional fees for Segue; and (c) $6,718.00 in professional fees and $121.00 in costs to CLA. Therefore, although the Total Award sought is $144,618.26, the total requested payment at this time is $115,789.96. The Receiver is asking for payment of the reduced amount at this time, at the request of and pursuant to discussions with the SEC.

This request is the Receiver's fourteenth application to the Court for compensation and reimbursement of expenses for services rendered on behalf of the Receiver.[8] In reviewing the fees paid to the Receiver's counsel, Thompson Coburn, it is important to note that a substantial portion of the fees paid to Thompson Coburn prior to June of 2013 were reimbursed to the accounts of the Receivership Entities. As previously reported, funds in the amount of

---

[7] Third-party vendors are often utilized by other receivers and attorneys for the functions described in this paragraph, and that utilization of vendors often results in substantial costs to the receivership entities.

[8] For a summary of previous fee applications and the status of the applications, see Exhibit F.

$487,300.00 were successfully recovered as part of the settlement of an Interpleader Action involving a D&O liability policy obtained by one of the Receivership Entities.  All of these funds were deposited into Receivership accounts and none of these funds were used to directly pay the Receiver's attorneys or to satisfy the twenty percent holdback imposed at the outset of this proceeding. At this point in time, none of the funds subject to the twenty percent holdback have been paid to the professionals performing services for the Receivership Entities.

No understanding exists between the Receiver and any other person for the sharing of compensation sought by this Application, except among the partners and associates of the firms retained by the Receiver.  In support of the efforts performed on behalf of the Receiver, the Receiver has attached Exhibits to her Application consisting of:

Exhibit A:  Second Quarter 2015 SFAR

Exhibit B:  Certification

Exhibit C:  Summaries of professional and paraprofessional time and fees

Exhibit D:  Individualized and detailed invoices of all services rendered, expenses, and disbursements for Thompson Coburn, Segue, and CLA

Exhibit E:  Proposed Order

Exhibit F: Summary of Previous Fee Applications

Exhibit C contains an aggregate summary of all hours and fees of all professionals and paraprofessionals that provided services to the Receiver during the Application Period. The total amount represents the amount of time expended by each attorney, paralegal, and professional multiplied by the applicable hourly rate. Exhibit D contains individualized and detailed descriptions of the daily services rendered and the hours expended by the various attorneys, paralegals, and professionals employed on behalf of the Receiver in this case during the Application Period. Exhibit D also contains a detailed schedule listing the expenses and

disbursements for which the Receiver seeks reimbursement. Exhibit D is based on, among other information, the contemporaneous daily time records maintained by the Receiver's attorneys, paralegals and professionals who rendered services in this case.[9] The Receiver has reviewed and approved these time records, and based on the complexity of the case, the Receiver respectfully submits that the requested compensation is reasonable.

### III. MEMORANDUM OF LAW IN SUPPORT OF REQUEST

Under governing law, following a determination that services were rendered and costs expended in furtherance of the Receivership, the Court may award compensation for the presented fees and costs. When determining an award of attorneys' fees, the Court should use the lodestar method of multiplying the number of hours reasonably expended by the reasonable hourly rate. *S.E.C. v. Petters*, No. 09-1750 ADM/JSM, 2009 WL 3379954, at *3 (D. Minn. Oct. 20, 2009) (citing *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002)). A reasonable hourly rate is the ordinary fee for similar work in the community. *Petters*, 2009 WL 3379954, at *3 (quoting *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982)); *see also Fish*, 295 F.3d at 851 ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."). The Receiver respectfully suggests that for the reasons stated herein and based upon the background information regarding rates and qualifications set forth in the Proposals and the Interim Status Reports, this request for fees for payment of the Receiver's attorneys and other professionals meets the criteria for this interim compensation.

In this case, the Court's Receivership Order requires the Receiver to "administer such assets as is required in order to comply with the directions contained in this Order, and to hold all

---

[9] Certain redactions to these records have been made because of work product and privilege concerns and to protect the confidentiality of investors and investment concerns.

other assets pending further order of this Court" (Dkt. No. 16, p. 2).   The Receivership Order allows the Receiver to: (i) appoint "one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business" (Dkt. No. 16, p. 3); and (ii) "engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities" (*id*.).  The Court further authorized payment of the Receiver's counsel from the funds held by the Receivership (*see* Dkt. No. 16, p. 6) and empowered the Receiver to "make or authorize such payments and disbursements from the funds taken into control, or thereafter received by the Receiver . . . as may be reasonable, necessary, and advisable in discharging the Receiver's duties" (*id*. p. 4).

The Receiver's attorneys, paralegals, accountants, and experts have incurred reasonable fees and costs consistent with the Court's orders, and payment is appropriate and warranted in consideration under applicable Eighth Circuit case law.

WHEREFORE, the Receiver respectfully requests that this Court enter the Order submitted herewith and marked as <u>Exhibit E</u>:

(i) finding that the Total Award is reasonable and appropriate;

(ii) approving *nunc pro tunc* the Receiver's reallocation between fees and expenses to the payment made to CLA pursuant to the Thirteenth Fee Application and subsequent order;

(iii) authorizing an award of fees and costs in the amount of $115,789.96;

(iv) directing the Receiver to make payments as follows based upon the authority submitted by the Receiver in support of this Application and allowing payment to be made from any one or more of the accounts listed on <u>Exhibit A</u>: (a) $107,331.85 in legal fees (representing

eighty percent (80%) of invoiced fees) and $355.80 in costs for Thompson Coburn; (b) $1,263.31 in professional fees (representing eighty percent (80%) of invoiced fees) for Segue; and (c) $6,718.00 in professional fees (representing eighty percent (80%) of invoiced fees) and $121.00 in costs for CLA; and

     (v) providing for such other relief as is appropriate under the circumstances.

Dated: August 6, 2015      Respectfully Submitted,

             THOMPSON COBURN LLP

             By  /s/ Kathleen E. Kraft
              Stephen B. Higgins, #25728MO
              Brian A. Lamping, #61054MO
              One US Bank Plaza
              St. Louis, Missouri 63101
              Phone: (314) 552-6000
              Fax: (314) 552-7000
              shiggins@thompsoncoburn.com
              blamping@thompsoncoburn.com

              Kathleen E. Kraft, #58601MO
              1909 K Street, NW, Suite 600
              Washington, DC 20006
              Phone: (202) 585-6922
              Fax: (202) 508-1035
              kkraft@thompsoncoburn.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 6, 2015, I electronically filed the foregoing with the Clerk of the Court through the Court's CM/ECF system which will send a notice of electronic filing to the following:

John R. Ashcroft, Esq.
Ashcroft Hanaway LLC
222 South Central Ave., Suite 110
St. Louis, Missouri 63105
*Counsel for Defendant Burton Douglas Morriss*

Robert K. Levenson
Brian T. James
Securities and Exchange Commission
801 Bricknell Avenue, Suite 1800
Miami, Florida 33131
*Attorneys for Plaintiff*

                                                      /s/   Kathleen E. Kraft