UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SECURITIES AND EXCHANGE COMMISSION, )
)
)
Plaintiff, )
)
vs. ) Case No. 4:12-CV-80 (CEJ)
)
BURTON DOUGLAS MORRISS, et al., )
)
Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the objection of Blink Marketing Group, LLC, (Blink) to the receiver's determination to disallow a portion of Blink's claim for materials and services it provided to Acartha Group, LLC. The receiver has filed a response in support of her determination.

On January 17, 2012, the Court appointed a receiver to oversee four investment entities established by defendant Burton Douglas Morriss, including Acartha Group, LLC (Acartha Group). The Court subsequently established a procedure for individuals or entities to submit claims for payment from the receivership entities. [Doc. #234, as amended by Doc. #278]. Blink submitted a claim for marketing materials and services it provided to Acartha Group. On April 28, 2015, the receiver notified Blink that she would recommend allowance of the claim in part. Blink timely filed an objection seeking payment of its entire claim.

I. **Background**

Blink is a sales and marketing communications agency. In mid-2011, Blink produced investor presentation materials for Acartha. See Invoices dated May –

August 2011 [Doc. #390-8]. In addition, Blink proprietor William Lawlor had multiple discussions with Morriss regarding Acartha's corporate website. See William Lawlor Affidavit at ¶¶ 4, 8 [Doc. #390-8 at 4]. On July 27, 2011, Lawlor emailed Morriss an offer (called a Statement of Work or "SOW"[1]) to design and execute changes to the website. Email and July 2011 SOW at §§ 1, 4 [Doc. #397-12]. The July 2011 SOW addressed three components to be completed for a total cost of $90,000. Id. It appears that Lawlor and Morriss discussed Blink's proposal because, on August 14, 2011, Lawlor emailed Morriss an updated SOW for work on two components for a total cost of $75,000. Email and August 2011 SOW at § 1 [Doc. #397-13]. Lawlor's email stated that he was "setting up team meetings" and "collect[ing] existing content."

On August 29, 2011, Morriss signed the August 2011 SOW. See Executed August 2011 SOW [Doc. #390-1 at 11]. The "Approval" section that Morriss signed provided that: "A deposit of 50% of the project costs will be required to initiate the project." Id. at § 5. Morriss returned the signed agreement but did not pay the deposit. Nonetheless, Blink began work on the Acartha website "because [Lawlor] believed Mr. Morriss would send payment as he promised and because the amount of work involved and the intended deadlines were such that getting a head start on the work was prudent."[2] William Lawlor's Second Affidavit at ¶8 [Doc. #390-10 at 5].

---

[1] Also referred to as "Scope of Work" by the parties.
[2] Lawlor states that the design Acartha requested presented "tough issues" that required "a good deal of time and effort" to resolve. William Lawlor's Supplemental Affidavit at ¶8 [Doc. #454]. Blink's timeline for completing the work was 8 to 12 weeks. August 2011 SOW at § 5 [Doc. #390-1].

On November 15, 2011, Lawlor emailed Morriss asking him to pay outstanding invoices for the investor presentation materials and to provide information on "timing on the Acartha site project." [Doc. #397-14]. On December 23, 2014, Lawlor again emailed Morriss seeking payment for the invoices. No mention was made of the Acartha website. [Doc. #397-15].

In 2015, Lawlor asked Blink's financial officer to calculate the value of the work that had been done on the Acartha website, applying Blink's 2011 hourly rates. Lawlor's 2nd Aff. at ¶9. The financial officer reviewed the August 2011 SOW, "wireframes" of the website, and a graphical depiction of the website. Based on that review, Blink determined that it spent 120 hours of work on planning and design services, for a cost of $34,670. See Blink's Supp. to Objection [Doc. #454]; Spreadsheet [Doc. #390-10 at 18]. According to Lawlor, "a good part of the time and work reflected" in its calculation "involved conferences with Mr. Morriss and Acartha employees." Lawlor's 2nd Aff. at ¶10 [Doc. #397-9].

Blink submitted a claim to the receiver for $74,594, consisting of (1) $37,094 for its work on investor presentations and a single web page and (2) $37,500 due under the August 2011 SOW. The receiver recommends the Court approve Blink's claim for $37,094 and deny the claim for $37,500.

II.  **Legal Standard**

A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. S.E.C. v. Capital Consultants, LLC, 397 F.3d 733, 738 (9th Cir. 2005) (citation and quotation omitted). The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. Id. The

3

receivership court has the power to use summary procedures in allowing, disallowing, and subordinating claims of creditors, so long as creditors have fair notice and a reasonable opportunity to respond. McFarland v. Winnebago S., Inc., 863 F. Supp. 1025, 1034 (W.D. Mo. 1994) (citing S.E.C. v. Hardy, 803 F.2d 1034, 1040 (9th Cir. 1986), and United States v. Arizona Fuels Corp., 739 F.2d 455, 458 (9th Cir. 1984)). Because a receivership court sits in equity, it also has the authority to cancel contracts as part of its equitable powers. See id. (court has authority to cancel instruments and contracts, including notes and deeds of trust). The evidence supporting cancellation must be clear, cogent and convincing. See id. (discussing authority to cancel promissory notes deeds of trust). The burden of proof is on the party who seeks the cancellation. Id. (citing Wilkie v. Elmore, 395 S.W.2d 168, 172 (Mo. 1965).

**III. Discussion**

Blink seeks $37,500.00 — the 50% deposit — due pursuant to the August 2011 contract; in the alternative, it requests $34,750.00 for its design services under equitable principles. The receiver argues that Blink has not established either a contractual or equitable right to payment.

It is undisputed that Morriss signed the Statement on August 29, 2011. The receiver contends that his signature did not create a binding contract because he did not pay the 50% deposit. Thus, according to the receiver, the Statement remains a mere proposal. Blink counters that the Statement was an offer that Morriss accepted when he signed it. Lawrence Andrea Mar. 3, 2015 letter at 1-2 [Doc. #390-10]. Blink asserts that the deposit requirement was "a condition precedent that only Blink could amend or waive." Id. at 2.

The existence of a contract requires both an offer and acceptance. Walker v. Rogers, 182 S.W.3d 761, 768 (Mo. Ct. App. 2006). A determination of whether an offer has been accepted depends upon what is actually said and done; it does not depend on the understanding or supposition of one of the parties. Id. Here, Blink made an offer in the form of an SOW. The SOW clearly defined the work to be done, the timeline for delivery, and the terms of payment. See DeCarlo & Doll, Inc. v. Bershtein, No. CV 9103232838, 1996 WL 456294, at *2 (Conn. Super. Ct. July 31, 1996) (verbal assent to proposal for services formed contract even without payment of deposit because the proposed agreement was "definite and certain as to its terms and requirements"). Morriss indicated his intention to enter into a contract by signing the SOW and returning it. The receiver contends that Morriss's signature had no legal effect. But, when he signed the proposal, Morriss knew that Blink was preparing content and scheduling meetings. There is no logical reason for him to have signed and returned the SOW unless he intended Blink to move forward with performance. His failure to pay the deposit does not negate the fact that a contract was formed or that Acartha became obligated to pay the deposit. And, the fact that Blink chose to proceed on the design work without first requiring the deposit does not nullify or otherwise invalidate the contract. Id. ("Any qualification of or departure from the terms in which the offer was made by the offeror, however, invalidates the offer unless the offeror agrees to the qualification or departure.") In this case, Blink states it accepted Morriss's departure from the terms of the offer by commencing work. Under the parties' contract, Acartha is obligated to pay the 50% deposit.

The receiver also argues that all the work Blink performed on the Acartha website was completed before Morriss signed the SOW on August 29, 2011, and therefore is merely Blink's cost of preparing the proposal.[3] In support of this contention, the receiver cites Lawlor's July 27, 2011 email to Morriss sending (1) the initial SOW, (2) a 4-page sitemap, and (3) "a wireframe[4] around the client login area functionality." Email [Doc. #397-12]. According to the receiver, these documents represent the sum total of the work Blink performed. Blink identifies additional documents showing a much expanded sitemap, additional wireframes, and 117 pages of web content. [Doc. #397-8 at 27-40; #397-18]. The Court finds that the record establishes that Blink performed work pursuant to a valid contract and is entitled to payment of the 50% deposit in the amount of $37,500.00. It is unnecessary to address Blink's alternative claim to payment for the work it performed pursuant to equitable principles.

The receiver argues that she is not bound by any contracts entered into by the receivership entities before her appointment, and that as an equity receiver she may reject any contracts under common law. The Court does not find that equity supports rejecting the Blink contract for the reasons argued here. The receiver suggests that Blink's claim will be subordinate to those of investors if there are insufficient funds to satisfy all claims. This argument will be taken up when the receiver presents her proposal for distribution of assets.

Accordingly,

---

[3] The Court will assume for the purposes of this memorandum that this provides sufficient legal justification for withholding the deposit.

[4] According to Lawlor, a "wireframe" is a visual guide showing the framework of a website. Lawlor Aff. in Support of Supplement, March 9, 2016. [Doc. #454].

**IT IS HEREBY ORDERED** that the objection of Blink Marketing Group, LLC [Doc. #390] is **sustained**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of April, 2016.